IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| OZARK SOCIETY,<br><br>Plaintiff, | * | |
| vs. | * | No. 4:11CV00782 SWW |
| UNITED STATES FOREST SERVICE, ET AL.,<br><br>Defendants. | * | |

**Memorandum Opinion and Order**

The Ozark Society has moved for a preliminary injunction in connection with its complaint filed on October 31, 2011, against the United States Forest Service; Judith Henry, Supervisor of the Ozark-St. Francis National Forest; the Bureau of Land Management; John Lyon, Eastern States Director, Bureau of Land Management; and Bruce Dawson, Eastern States Field Manager, Bureau of Land Management. The Ozark Society asserts that defendants failed to comply with the National Environmental Policy Act and other federal environmental and procedural statutes in approving gas leases for exploration and development in the Ozark National Forest.

The Court heard argument on the Ozark Society's motion for preliminary injunction on March 1, 2012. After careful review and reflection, the Court finds that the motion should be denied.

**Background**

The National Forest Management Act ("NFMA") requires the United States Forest Service ("USFS") to prepare a forest management plan for each National Forest. 16 U.S.C. § 1604(a). The National Environmental Policy Act ("NEPA") requires that an Environmental Impact Statement ("EIS") accompany any major federal action, such as a forest management plan. 42 U.S.C. § 4332. The forest management plan for the Ozark National Forest is the 2005 Revised Land and Resource Management Plan ("2005 RLRMP"). It is accompanied by a Final Environmental Impact Statement ("2005 FEIS"), which anticipates "10 federal wells and 5 wells on reserved and outstanding minerals for the planning period,"[1] which is ten years.

In 2007, recognizing the potential for increased natural gas exploration and development in the Ozark-St. Francis National Forests, the USFS asked the Bureau of Land Management ("BLM") to prepare an updated forecast of well activity, and in 2008, the BLM submitted a Reasonable Foreseeable Development ("2008 RFD") which documented the increased gas development potential in Arkansas. After reviewing the 2008 RFD, the USFS issued a Changed Conditions Analysis ("CCA") in conjunction with a Supplemental Information Report ("SIR") in September 2010. The CCA cited the 2008 RFD's prediction of as many as 1,730 wells with a resulting disturbance of approximately 10,316 acres on USFS lands[2] over a ten-year period. The SIR referenced the CCA and found:

> Based on the analyses disclosed in this report, the current direct, indirect, and cumulative effects of ongoing land management activities on federal lands; and

---

[1]Defs.'s Resp. to Mot. Prelim. Inj., Attach. A (2005 FEISD at 3-82), docket entry 24-6 at 133.

[2]The prediction included a small percentage of wells that could occur on the Ouachita National Forest. Defs.' Resp. to Mot. Prelim. Inj., Attach. D (CCA) at 3, docket entry 24-6 at 1182.

> the additive impacts regarding the new RFD gas well development predictions are minimal and they do not measurably exceed the scope of the effects previously analyzed in the Revised Forest Plan's final Environmental Impact Statement. Therefore, a correction, supplement or revision to that FEIS is not needed; and no changes or additions to the existing plan direction were identified, so a Forest Plan amendment is not needed.

Defs.' Resp. to Mot. Prelim. Inj., Attach D at 28 (docket entry 24-6 at 1207).

The SIR basically repeated the above finding, stating: "Based on the interdisciplinary team review of this project, I [defendant Henry] have determined that the existing plan direction is adequate to address the effects anticipated from the new RFD, and that a correction, supplement, or revision to the Revised Forest Plan's Environmental Impact Statement will not be necessary." *Id.*, Attach. C at 3 (docket entry 24-6 at 1207).

In its argument for preliminary injunction, the Ozark Society focuses on the first two counts in its six-count complaint: that defendants violated the NEPA in connection with the SIR by failing to take a "hard look" at the consequences of gas leasing and development in the Ozark National Forest and failing to allow public participation. The Ozark Society asks the Court, pursuant to the the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* ("APA"), to enjoin both conventional and hydraulic fracturing and horizontal drilling in the Ozark National Forest. The motion specifically requests that the Court "require the defendants to immediately rescind any authority to conduct surface disturbing activities in the Ozark National Forest, pursuant to an approved Application for Permit to Drill ("APD"), which have not yet commenced." Mot. Prelim. Inj., [docket entry 2] at 2, ¶ 4.

**Discussion**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tip in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). The district court's inquiry is an equitable one, requiring the court to consider "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir.1981).

A. Likelihood of Success on the Merits

The Ozark Society claims that the USFS's decision to rely on previous NEPA documentation - the 2005 EIS - to support the SIR violates the NEPA. It asserts that the SIR represents a decision by the defendants that the new information - a 2008 prediction of a 150% increase in the number of gas wells - is insignificant. The Ozark Society complains that defendants made that determination without taking a "hard look" at the effects of not only increasing the number of conventional wells but also allowing hydraulic fracturing and horizontal drilling. It also complains the determination was made without public input. Defendants argue the Ozark Society cannot establish that defendants had a duty under NEPA to supplement the 2005 EIS or that the SIR is a final agency action under the APA and thus subject to judicial review.

In *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 72-3 (2004) ("*SUWA*"), the Supreme Court stated:

> NEPA requires a federal agency to prepare an environmental impact statement (EIS) as part of any "proposals for legislation and other major Federal actions

> significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). Often an initial EIS is sufficient, but in certain circumstances an EIS must be supplemented. See *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 370-374 (1989). A regulation of the Council on Environmental Quality requires supplementation where "[t]here are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." 40 CFR § 1502.9(c)(1)(ii) (2003). In *Marsh*, we interpreted § 4332 in light of this regulation to require an agency to take a "hard look" at the new information to assess whether supplementation might be necessary. 490 U.S. at 385.

In *SUWA*, the Supreme Court held that evidence of increased off-the-road vehicle use was not on-going major federal action under the NEPA that could require supplementation of the existing EIS: "[A]lthough the '*[a]pproval* of a [land use plan]' is a 'major Federal action' requiring an EIS, that action is completed when the plan is approved. The land use plan is the 'proposed action' contemplated by the regulation." 542 U.S. at 73 (emphasis in the original)(citation omitted). Defendants argue the "major Federal action" in the case before the Court occurred in 2005 when the forest management plan was approved.[3] They contend the SIR is merely a report that does not authorize any natural gas development or commit the agencies to any course of action.

Defendants also argue the Ozark Society cannot establish the second prong of a NEPA supplementation claim because the 2008 RFDS is not new information that "is sufficient to show that the remaining action will 'affec[t] the quality of the human environment' in a significant manner or to a significant extent not already considered . . ." *Marsh v. Natural Resources*

---

[3]In *Sierra Club v. Kimbell*, 623 F.3d 549, 557-8 (8th Cir. 2010), the court held the Sierra Club had standing to challenge a forest plan that it contended harmed the recreational interests of specific visitors because of the amount, location, and methods of timber harvesting it permitted. The court said the Sierra Club's allegations of harm presented "'significantly different' issues than a claim based on future logging or clearcutting alone."

*Council*, 490 U.S. 360, 374 (1989) (citation omitted). Defendants argue that the SIR analyzed the 2008 RFD and found it did not raise new questions about environmental impact because history proved its prediction - up to 1,730 wells - to be inaccurate. Defendants point out that only forty-two wells have actually been drilled within the Ozark National Forest since 2005, and no actions involving unconventional fracking have been proposed.[4] Defendants argue the 2008 RFD raised no reasonable need to revisit the 2005 EIS.

Defendants assert the Ozark Society cannot establish that the SIR constitutes reviewable final agency action under the APA. The APA provides a private right of action and waiver of sovereign immunity only for challenges to discreet and final agency actions. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990). For an agency action to be final, it must meet two conditions. First, "the action must mark the consummation of the agency's decision making process," as it "must not be merely tentative or interlocutory." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). Second, "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id*. (internal quotations omitted).

In *Lujan*, the plaintiff challenged the BLM's decision, pursuant to a "land withdrawal review program," to lift restrictions on millions of acres of public lands and open them up for commercial mining. The Supreme Court held that the government's program was not a "final agency action" subject to review under NEPA. The Supreme Court further held that the BLM's decision to make the lands legally available for mining caused no immediate harm to the plaintiff.

---

[4]The Ozark Society states that while no horizontal wells have been drilled, every acre above the Fayetteville Shale Plate has been leased and that is evidence of movement toward horizontal drilling and fracturing.

"A broad agency program is not a final agency action within the meaning of 5 U.S.C.§ 704. Nor is an agency report that 'serves more like a tentative recommendation than a final and binding determination.' But if the agency has issued 'a definitive statement of its position, determining the rights and obligations of the parties,' that action is final for purposes of judicial review despite the 'possibility of further proceedings in the agency' to resolve subsidiary issues." *Sierra Club v. United States Army Corps of Engineers*, 446 F.3d 808, 813 (8th Cir. 2006).

The Ozark Society asserts the SIR meets the requirements of "final agency action'" because it represents a final decision that additional documentation was not necessary to increase the predicted number of wells and had the legal consequence of denying the Ozark Society the opportunity to participate in the public comment process. The Ozark Society argues that the effect of the SIR is to give defendants legal status to approve new wells without studying the consequences and without allowing its participation in the decision-making. It argues that additional drilling in the Mount Magazine ranger district shows that the legal effect of the SIR is to allow defendants to permit those wells without having conducted NEPA studies. It also argues that defendants are using the SIR to support categorical exclusions under the Energy Policy Act of 2005.

Notwithstanding these arguments, the Court finds the Ozark Society is not likely to prevail on its claims that defendants violated the NEPA and the APA with regard to the issuance of the SIR. The Court is not persuaded that defendants' decision by virtue of the issuance of the SIR to forego additional NEPA documentation in light of the 2008 RFDS is a major federal action or that the SIR represents a final agency action subject to judicial review. *See Lujan*, 497

U.S. at 891 (there must be some concrete agency action which harms or threatens to harm the claimant).

B. Threat of Irreparable Harm

The Ozark Society argues there is a threat of irreparable harm if the Court does not grant a preliminary injunction because the legal effect of the SIR is to allow defendants to permit drilling in connection with the leases it has sold. It argues that allowing defendants to continue granting permits to drill threatens not just the environment but also the Ozark Society's interest in the aesthetic, recreational, and other values associated with the Ozark National Forest as well as its interest in being involved in the decision-making process.

Defendants state they have not approved any unconventional fracking in the Ozark National Forest and no such approval is imminent. They say that while the 2008 RFDS predicted up to 1,750 wells could be drilled between 2005 and 2015, only forty-two wells have actually been drilled since 2005, causing a total surface disturbance of about 205 of the forest's 1,162,000 acres.[5] Defendants state they have no plans to allow new wells to be drilled based on the SIR[6]

---

[5]Defs.' Resp. to Mot. Prelim. Inj., Attach. 1 (Dawson Decl.) at ¶ 5 (docket entry 24-1); Attach. 6 (Henry Decl.) at ¶3 (docket entry 24-6).

[6]The Ozark Society complains that defendants used the SIR to justify the use of an Energy Policy Act of 2005 categorical exclusion, referencing decision documents for certain undrilled wells. The Ozark Society argues that the Act "permits use of a categorical exclusion for an individual well only if 'an environmental document **prepared pursuant to NEPA** analyzed drilling as a reasonable foreseeable activity, so long as such plan or document was approved within five years prior to the date of spudding the well.' 42 U.S.C. § 15942(b)(3)(emphasis added)." Pl's. Reply to Defs'.' Resp. To Mot. Prelim. Inj. at 11 (docket entry 28). Defendants submit they have suspended those authorizations to drill and placed the applications to drill ("APDs") on hold "subject to further review for NEPA compliance." Defs.' Surreply to Pl's.' Reply, Ex. 2 (Dawson Decl.) (docket entry 33-2 at 3).

and the alleged environmental harm is therefore conjectural. Further, defendants argue procedural harm cannot be the basis for irreparable harm. *See Summer v. Earth Island Institute*, 555 U.S. 488, 496-7 (2009)(procedural harm alone is insufficient to establish standing).

A plaintiff seeking injunctive relief must show that "the threat is actual and imminent, not conjectural or hypothetical." *Summers*, 555 U.S. at 493. Failure to show irreparable harm "is an independently sufficient ground upon which to deny a preliminary injunction." *Rogers Group, Inc. v. City of Fayetteville, Arkansas*, 629 F.3d 784, 789 (8th Cir. 2010) (internal quotation and citation omitted). The Court finds the Ozark Society fails to establish the threat of imminent irreparable harm is likely.

C. Remaining Factors

Because the Ozark Society failed to establish that it is likely to succeed on the merits or that it likely will suffer irreparable harm absent preliminary relief, little needs to be said about the remaining two *Winters* factors: the public interest and the balance of equities.

There is no dispute that the national forests serve a number of purposes: "outdoor recreation, range, timber, watershed, and wildlife and fish purposes." 16 U.S.C. § 528. The Federal Land Management Policy Act recognizes the many values of public lands, including the "Nation's need for domestic sources of minerals, food, timber, and fiber from the public lands . . . ." 43 U.S.C. § 1701 (7), (8), (12) "Congress has entrusted the task of balancing mineral development and environmental protection in the national forests to the Department of Agriculture, and its delegate the Forest Service." *California Coastal Com'n v. Granite Rock Co.*, 480 U.S. 572, 599 (1987).

Without a doubt, the issues in this lawsuit will have an impact on the public, including its involvement in the decision-making process for gas leasing, exploration and development in the Ozark National Forest. Considering the multiple uses of the national forests, the Court finds the evidence presented does not establish that the public interest factor weighs significantly in favor of one party or the other. Likewise, the balance of harms to each party does not weigh heavily one way or the other.

Conclusion

Because the Ozark Society fails to establish a likelihood of success on the merits or the threat of imminent irreparable harm, the Court finds the motion for preliminary injunction [docket entry 2] should be denied.

SO ORDERED this 23rd day of March, 2012.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE